## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

|  |  |
|---|---|
| | **CHAPTER 11** |
| **BURNS ASSET MANAGEMENT, INC.,**<br>**DEBTOR** | **CASE NO. 20-03888-5-SWH** |

## BURNS ASSET MANAGEMENT, INC.'S DISCLOSURE STATEMENT,
## DATED JANUARY 29, 2021

*Table of Contents*

I.    Introduction
      A.    Purpose of This Document
      B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing
      C.    Disclaimer
II.   Background
      A.    Description and History of Debtor's Business
      B.    Events Leading to Chapter 11 Filing
      C.    Significant Events During the Bankruptcy Case
      D.    Projected Recovery of Avoidable Transfers
      E.    Claims Objections
      F.    Current and Historical Financial Conditions
III   Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests
      A.    The Purpose of Plan of Reorganization
      B.    Unclassified Claims
      C.    Classes of Claims and Equity Interests
      D.    Means of Implementing the Plan
      E.    Risk Factors
      F.    Executory Contracts and Unexpired Leases
      G.    Tax Consequences of Plan
IV.   Confirmation Requirements and Procedures
      A.    Who May Vote or Object
      B.    Votes Necessary to Confirm the Plan
      C.    Liquidation Analysis
      D.    Feasibility
V.    Effect of Confirmation of Plan
      A.    Discharge of Debtor
      B.    Modification of Plan
      C.    Final Decree
VI.   Other Plan Provisions

B25B (Official Form 25B) (12/08) - Cont.                                                    3

## I.   INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Burns Asset Management, Inc., (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Chapter 11 Plan of Reorganization, (the "Plan") filed by the Debtor on January 29, 2021. A full copy of the Plan is attached to the Disclosure Statement as Exhibit A. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed at pages 6 -15 of this Disclosure Statement. There are no General Unsecured Creditors in this case. The Debtor filed the present case in an attempt to reamortize the lien claims against each of its rental properties and bring each lien claim payment current, paying each Allowed Secured Claim in full over a 30 year amortization. The Debtor proposes to make the payments on the reamortized lien claims from the net rental receipts for each rental property.

### A.   Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B.   Deadlines for Voting and Objecting: Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

#### 1.   *Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan*

The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will take place on a date and time established by the Court. A copy of the Order establishing the date, time and place of the confirmation hearing will be served by the Debtor along with Conditional Approval of the Disclosure Statement and ballots.

   2.    *Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Bradford Law Offices, 455 Swiftside Drive, Suite 106, Raleigh, NC 27518-7198. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by the date established in the Order Conditionally Approving the Disclosure Statement or it will not be counted.

   3.    *Deadline for Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon the Debtor and Debtor's Counsel by the deadline established in the Order Conditionally Approving the Disclosure Statement.

   4.    *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Danny Bradford at Bradford Law Offices, 455 Swiftside Drive, Suite 106, Raleigh, NC 27518-7198. Telephone (919)758-8879.

C.    **Disclaimer**

*The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed until the deadline established in the Order Conditionally Approving the Disclosure Statement.*

II.    **BACKGROUND**

A.    **Description and History of the Debtor's Business**

The Debtor is a North Carolina corporation owed solely by James Jerald Burns. Mr. Burns previously filed several Chapter 11 and Chapter 13 cases to cram down the mortgage on his various rental properties, but was stymied in each case by medical problems and an ongoing domestic court battle that consumed his resources and constrained his ability to confirm a viable plan of reorganization. Mr. Burn has now resolved his decade-long domestic case and is prepared to finally resolve the mortgages on his remaining rental properties. Mr. Burns has now transferred his remaining unpaid rental properties to the Debtor in an attempt to resolve once and for all the payment arrangements on the lien claims against the properties.

### B.    Events Leading to Chapter 11 Filing

The Debtor references its business description in Paragraph D for a full explanation of the events giving rise to this bankruptcy filing. The Debtor has filed the present case in an attempt to reamortize the lien claims against each of its rental properties and bring the payments on those claims current. The Debtor proposes to make the payments on the reamortized lien claims from the net rental receipts for each rental property.

### C.    Significant Events During the Bankruptcy Case

Since the Petition Date, the Debtor has taken steps to ensure it has all rental properties fully rented and has income sufficient to make all payment proposed under this Plan of Reorganization. The Debtor hired bankruptcy counsel, which employment is pending approval by the Court.  The Debtor is generating an average monthly rental income in the amount of $6,650.00 which is sufficient to pay operating costs and the modified lien payments on his rental properties proposed herein.

### D.    Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

### E.    Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article V of the Plan.

### F.    Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in Exhibit B. The source of the information provided is from the Debtor and the valuation is based upon the fair market value of said assets on the Petition Date.

The Debtors' most recent financial statements [if any] issued before bankruptcy, each of which was filed with the Court, are set forth in Exhibit C.

The most recent post-petition operating report filed since the commencement of the Debtors' bankruptcy case are set forth in Exhibit D.


## III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or

B25B (Official Form 25B) (12/08) - Cont.                                                                 6

equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.      Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has *not* placed the following claims in any class:

1.      *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under §507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional fees, as approved by the Court | $10,000.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | $0 | Paid in full on the effective date of the Plan |
| Other administrative expenses | $0 | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | $0 | Paid in full on the effective date of the Plan |
| TOTAL | $10,000.00 | |

2.      *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed

B25B (Official Form 25B) (12/08) - Cont.                                                 7

treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| None. | $0.00 | N/A | N/A |

### C.    Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1A | *Secured claim of:* Nationstar Mortgage, dba Mr. Cooper, ("Nationstar")<br><br>Collateral description =<br><br>House and lot located at 6913 Glendower Road in Raleigh, NC<br><br>Deed of Trust filed on 9/2/2004 in Book 11002, Page 1659, Wake County Registry.<br><br>Allowed Secured Amount = $180,000.00 | No | Impaired | Monthly Pmt  = $966.28<br><br>Pmts Begin   5/1/2020<br><br>Pmts End     4/1/2050<br><br>Interest rate % = 5.0%<br><br>Treatment of Lien<br><br>Nationstar shall retain a lien in the amount of $180,000.00 until said amount, with interest is paid in full as proposed hereunder.<br><br>Upon Confirmation of |

| | | | | |
|---|---|---|---|---|
| | Priority of lien = 1st priority lien<br><br>Principal owed = $299,758.36<br><br>Pre-pet. arrearage = $unk.<br><br>Total claim = $299,758.36 | | | this Plan, the Debtor's obligation for payment of the lien claim held by Nationstar shall be deemed current and all arrearages cured.<br><br>Unless specifically modified in the Debtor's Plan, all terms and conditions contained in the promissory note and other contractual documents between the parties shall remain in full force and effect.<br><br>The monthly payment amount includes principal and interest payment in the amount of $966.28. Taxes and insurance payments shall be not escrowed as part of this Plan.<br><br>All amounts owed in excess of the Allowed Secured Amount shall be bifurcated and shall not be paid as the Debtor has no liability for the Principal owed and Mr. Burns has previously discharged all liability for the Principal owed. |
| 1B | *Secured claim of:* Nationstar Mortgage, dba Mr. Cooper, ("Nationstar")<br><br>Collateral description = <br><br>House and lot located at 310/312 West Park Street | No | Impaired | The Debtor will surrender the collateral securing this claim to Nationstar in full satisfaction of its claims. |

B25B (Official Form 25B) (12/08) - Cont.                                                  9

| | | | | |
|---|---|---|---|---|
| | in Cary, NC<br><br>Deed of Trust filed on 9/2/2004 in Book 11002, Page 1625, Wake County Registry.<br><br>Allowed Secured Amount = $150,000.00<br><br>Priority of lien = 1st priority lien<br><br>Principal owed = $181,596.76<br><br>Pre-pet. arrearage = $unk.<br><br>Total claim = $181,596.76 | | | |
| 1C | *Secured claim of:* NewRez, LLC, dba Shellpoint Mortgage Servicing, ("NewRez")<br><br>Collateral description =<br><br>House and lot located at 839 Barringer Drive in Raleigh, NC<br><br>Deed of Trust filed on 7/9/2004 in Book 10915, Page 1465, Wake County Registry.<br><br>Allowed Secured Amount = $160,000.00<br><br>Priority of lien = 1st priority lien<br><br>Principal owed = $190,571.13 | No | Impaired | Monthly Pmt = $858.91<br><br>Pmts Begin    5/1/2020<br><br>Pmts End     4/1/2050<br><br>Interest rate % = 5.0%<br><br>Treatment of Lien<br><br>NewRez shall retain a lien in the amount of $160,000.00 until said amount, with interest is paid in full as proposed hereunder.<br><br>Upon Confirmation of this Plan, the Debtor's obligation for payment of the lien claim held by NewRez shall be deemed current and all arrearages cured. |

B25B (Official Form 25B) (12/08) - Cont.                                              10

| | | | | |
|---|---|---|---|---|
| | Pre-pet. arrearage = $unk.<br><br>Total claim = $190,571.13 | | | Unless specifically modified in the Debtor's Plan, all terms and conditions contained in the promissory note and other contractual documents between the parties shall remain in full force and effect.<br><br>The monthly payment amount includes principal and interest payment in the amount of $858.91. Taxes and insurance payments shall be not escrowed as part of this Plan.<br><br>All amounts owed in excess of the Allowed Secured Amount shall be bifurcated and shall not be paid as the Debtor has no liability for the Principal owed and Mr. Burns has previously discharged all liability for the Principal owed. |
| 1D | *Secured claim of:*<br>Select Portfolio Servicing, Inc., ("SPS")<br><br>Collateral description =<br><br>House and lot located at 1129 Karial Court in Zebulon, NC<br><br>Deed of Trust filed on 9/19/2006 in Book 12172, Page 1507, Wake County Registry.<br><br>Allowed Secured | No | Impaired | Monthly Pmt = $322.09<br><br>Pmts Begin    5/1/2020<br><br>Pmts End    4/1/2050<br><br>Interest rate % = 5.0%<br><br>Treatment of Lien<br><br>SPS shall retain a lien in the amount of $160,000.00 until said amount, with interest is paid in full as proposed |

B25B (Official Form 25B) (12/08) - Cont.                                          11

| | | Amount = $60,000.00

Priority of lien = 1st priority lien

Principal owed = $86,064.40

Pre-pet. arrearage = $unk.

Total claim = $86,064.40 | | | hereunder.

Upon Confirmation of this Plan, the Debtor's obligation for payment of the lien claim held by SPS shall be deemed current and all arrearages cured.

Unless specifically modified in the Debtor's Plan, all terms and conditions contained in the promissory note and other contractual documents between the parties shall remain in full force and effect.

The monthly payment amount includes principal and interest payment in the amount of $322.09. Taxes and insurance payments shall be not escrowed as part of this Plan.

All amounts owed in excess of the Allowed Secured Amount shall be bifurcated and shall not be paid as the Debtor has no liability for the Principal owed and Mr. Burns has previously discharged all liability for the Principal owed. |
| 1E | *Secured claim of:* Specialized Loan Servicing, LLC, ("SLS")

Collateral description = | No | Impaired | The lien of SLS shall be avoided in its entirety as there is no equity in the property securing its lien. |

B25B (Official Form 25B) (12/08) - Cont.                                                    12

| | | | | |
|---|---|---|---|---|
| | House and lot located at 1129 Karial Court in Zebulon, NC<br><br>Deed of Trust filed on 9/19/2006 in Book 12172, Page 1527, Wake County Registry.<br><br>Allowed Secured Amount = $0.00<br><br>Priority of lien = 2nd priority lien<br><br>Principal owed = $19,618.22<br><br>Pre-pet. arrearage = $unk.<br><br>Total claim = $19,618.22 | | | All amounts owed to SLS shall be bifurcated and shall not be paid as the Debtor has no liability for the Principal owed and Mr. Burns has previously discharged all liability for the Principal owed.<br><br>The Wake County Register of Deeds shall cause the Deed of Trust filed in Book 12172, Page 1527, Wake County Registry to be marked "satisfied" or "canceled" within 30 days of the Effective Date of the Plan and SLS shall assist the Clerk and Debtor in any way reasonably necessary to cause the Deed of Trust to be marked as "satisfied" or "canceled". |
| 1F | *Secured claim of:* Specialized Loan Servicing, LLC, ("SLS")<br><br>Collateral description =<br><br>House and lot located at 829 Barringer Drive in Raleigh, NC<br><br>Deed of Trust filed on 11/9/2005 in Book 11670, Page 1943, Wake County Registry.<br><br>Allowed Secured Amount = $160,000.00 | No | Impaired | Monthly Pmt = $858.91<br><br>Pmts Begin    5/1/2020<br><br>Pmts End    4/1/2050<br><br>Interest rate % = 5.0%<br><br>Treatment of Lien<br><br>SLS shall retain a lien in the amount of $160,000.00 until said amount, with interest is paid in full as proposed hereunder.<br><br>Upon Confirmation of |

| | | | | |
|---|---|---|---|---|
| | Priority of lien = 1st priority lien<br><br>Principal owed = $182,133.99<br><br>Pre-pet. arrearage = $unk.<br><br>Total claim = $182,133.99 | | | this Plan, the Debtor's obligation for payment of the lien claim held by SLS shall be deemed current and all arrearages cured.<br><br>Unless specifically modified in the Debtor's Plan, all terms and conditions contained in the promissory note and other contractual documents between the parties shall remain in full force and effect.<br><br>The monthly payment amount includes principal and interest payment in the amount of $858.91. Taxes and insurance payments shall be not escrowed as part of this Plan.<br><br>All amounts owed in excess of the Allowed Secured Amount shall be bifurcated and shall not be paid as the Debtor has no liability for the Principal owed and Mr. Burns has previously discharged all liability for the Principal owed. |
| 1G | *Secured claim of:* Heritage Point HOA, ("Heritage Point")<br><br>Collateral description =<br><br>All real property owned by the Debtor. | No | Impaired | The lien of Heritage Point shall be avoided in its entirety as there is no equity in any property owned by the Debtor securing its lien.<br><br>All amounts owed to |

| | Judgment lien filed on 4/9/2015 in file number 14 CVD 16826, Wake County.<br><br>Allowed Secured Amount = $0.00<br><br>Priority of lien = 2nd priority lien<br><br>Principal owed = $10,715.67<br><br>Pre-pet. arrearage = $unk.<br><br>Total claim = $10,715.67 | | | Heritage Point shall be bifurcated and shall not be paid as the Debtor has no liability for the Principal owed.<br><br>The Wake County Clerk of Court shall cause the Judgment filed in case number 14 CVD 16826 to be marked "satisfied" or "canceled" within 30 days of the Effective Date of the Plan and Heritage Point shall assist the Clerk and Debtor in any way reasonably necessary to cause the Judgment to be marked as "satisfied" or "canceled". |

2.    *Classes of Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 2 | None | | |

3.    *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. Class 3A is a §1122(b) convenience class of general unsecured claims that do not exceed $2,000.00 in amount.

The following chart identifies the Plans proposed treatment of Classes 3A through 3B, which contain general unsecured claims against the Debtor:

B25B (Official Form 25B) (12/08) - Cont.                                                    15

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 3 | General Unsecured Class | Not Impaired | There are no unsecured creditors. |

    4.        The interests of the individual Debtor in property of the estate.

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 4 | Shareholder's interest in property of the Estate | Impaired | Title to and ownership of all property of the estate will vest in the Debtor upon Confirmation of the Plan, subject to all valid liens of Secured Creditors under the Confirmed Plan. Liens of bifurcated Claims will be valid only to the extent of the Allowed Secured Amount of the Claim |

    D.       **Means of Implementing the Plea**

        1.      *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

The Debtor expects to receive gross monthly rental income in the amount of $4,950.00 from the full rentals of the various properties owned by the Debtor.

B25B (Official Form 25B) (12/08) - Cont.                                                    16

The Debtor's specific income and non-mortgage expenses for each rented property is as follows:

| Property Address: | Monthly Rent: | Monthly Taxes: | Monthly Insurance: | Maintenance: | Net Rent: |
|---|---|---|---|---|---|
| 6319 Glendower | $2,000.00 | $237.13 | $87.83 | $80.00 | $1,595.04 |
| 310/312 W. Park | $0.00 (Surrender) | | | | $0.00 |
| 839 Barringer | $1,500.00 | $186.57 | $56.42 | $80.00 | $1,177.01 |
| 1129 Karial Court | $0.00 | $75.60 | $50.67 | $80.00 | -$206.27 |
| 829 Barringer | $1,450.00 | $165.55 | $59.25 | $80.00 | $1,145.20 |
| TOTAL: | $4,950.00 | $664.85 | $254.17 | $320.00 | $3,710.98 |

From the gross rental proceeds, the Debtor proposes to make the following monthly payment to lien holders, with each payment including only principal and interest:

| Property Address: | Net Monthly Rent: | Proposed Payment: | Net after Plan payments: |
|---|---|---|---|
| 6319 Glendower | $1,595.04 | $966.28 | $628.76 |
| 310/312 W. Park | $0.00 | $0.00 (surrender) | $0.00 |
| 839 Barringer | $1,177.01 | $858.91 | $318.10 |
| 1129 Karial Court | -$206.27 | $322.09 | -$528.36 |
| 829 Barringer | $1,145.20 | $858.91 | $286.29 |
| TOTAL: | $3,710.98 | $3,006.19 | **$704.79** |

TOTAL SECURED PLAN PAYMENTS::                        $3,006.19

Net average income remaining after all expenses and monthly plan payments are made:                                        **$704.79**

### E.    Risk Factors

The proposed Plan has the following risks:

The major risk to the Debtor's effective reorganization is the state of the Covid-19 Virus in the Raleigh area and its affects on the Debtor's ability to continue collecting apartment rents to fund this Plan.

### F.    Executory Contracts and Unexpired Leases

The Plan, in Article 6.01, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article 6.01 also lists how the Debtor will cure and compensate the

B25B (Official Form 25B) (12/08) - Cont.                                                    17

other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance pf performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6.01 will be rejected under the Plan.  Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

*The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract Is May 1, 2021.*  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G.      **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The following are the anticipated tax consequences of the Plan:
(1) Tax consequences to the Debtor of the Plan.

There are potential adverse tax consequences to the Debtor in the form of forgiveness of indebtedness income.

(2) General tax consequences on creditors of any discharge, and the general tax consequences of receipt of plan consideration after confirmation:

There may be potential adverse or positive tax consequences to creditors who receive distributions and who have liabilities that are extinguished by the Plan.  You should consult with a tax professional or attorney for more specific information about potential tax consequences.


IV.     **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that : the Plan must be proposed in good faith; at least one impaired class of claims must accept the Plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A.      **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that all classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

1.      *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposed pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case is 4/19/2021 for non-governmental creditors and 5/17/2021 for government creditors.***

2.      *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.      *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;
- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of***

**the Plan and to the Adequacy of the Disclosure Statement.**

>    4.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

> B.    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1)at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

>    1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

>    2.    *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirement of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a "cram down" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

> C.    **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Disclosure Statement as Exhibit E.

> D.    **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan

B25B (Official Form 25B) (12/08) - Cont.                                                          20

       1.    *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this Disclosure Statement as Exhibit F.

       2.    *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit G.

The Plan Proponent's financial projections show that the Debtor will have an aggregate monthly average cash flow in the amount of $4,950.00, and that from these gross proceeds it can pay expected monthly expenses of $1,239.02, and proposed Plan payments in the total amount of $3,006.19, leaving $704.79 average monthly net profits.

The Debtor bases these assumptions and projection of future income on current leases and expenses as well as payment proposed under this Plan.

***You Should Consult with Your Accountant or Other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V.    **EFFECT OF CONFIRMATION OF PLAN**

    A.   <u>Discharge.</u>  Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments to Class 3 General Unsecured Creditors under the Plan, or as otherwise provided in § 1141(d)(5) of the Code. **The Debtor is not entitled to a Discharge in this case, and does not seek a Discharge in this case.** Debtor will not be discharged from any debt excepted from discharge § 523 of the Code, except as provided in Rule 4007(C) of the Federal Rules of Bankruptcy Procedure.

    B.   **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

Upon the request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

B25B (Official Form 25B) (12/08) - Cont.                                                                21

C.      **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or other such party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

# VI.      OTHER PLAN PROVISIONS

NONE.

S/James Jerald Burns
James Jerald Burns, President

S/ Danny Bradford
Danny Bradford, Attorney for Debtor

**EXHIBITS**

**B25B (Official Form 25B) (12/08) - Cont.**

**Exhibit A -** Copy of Proposed Plan of Reorganization

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

IN RE:

                                      **CHAPTER 11**
**BURNS ASSET MANAGEMENT, INC.,**       **CASE NO. 20-03888-5-SWH**
            **DEBTOR**

**BURNS ASSET MANAGEMENT, INC.'S PLAN OF REORGANIZATION,**
**DATED JANUARY 29, 2021**

**ARTICLE I**
**SUMMARY**

      This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay lien claims against the properties owned by Burns Asset Management, Inc., (the "Debtor"). This Plan provides for 7 classes of secured claims and 1 class of equity security holders. There are no General Unsecured Creditors in this case. The Debtor filed the present case in an attempt to reamortize the lien claims against each of its rental properties and bring each lien claim payment current, paying each Allowed Secured Claim in full over a 30 year amortization. The Debtor proposes to make the payments on the reamortized lien claims from the net rental receipts for each rental property. This Plan also provides for the payment of administrative and priority claims in a manner permitted by the Code. Specifically, allowed priority tax claims shall be paid in full no later than 60 months from the Petition Date.

      All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

2.01    <u>Class 1A.</u>    The claim of Nationstar Mortgage, dba Mr. Cooper, ("Nationstar"), to the extent allowed as a secured claim under § 506 of the Code.

              <u>Class 1B.</u>    The claim of Nationstar Mortgage, dba Mr. Cooper, ("Nationstar"), to the extent allowed as a secured claim under § 506 of the Code.

              <u>Class 1C.</u>    The claim of NewRez, LLC dba Shellpoint Mortgage Servicing, ("NewRez"), to the extent allowed as a secured claim under § 506 of the Code.

              <u>Class 1D.</u>    The claim of Select Portfolio Servicing, Inc., ("SPS"), to the extent allowed as a secured claim under § 506 of the Code.

B24A (Official Form 25A) (12/08) - Cont.                                                     2

<div style="margin-left:2em">

Class 1E.    The claim of Specialized Loan Servicing, LLC, ("SLS"), to the extent allowed as a secured claim under § 506 of the Code.

Class 1F.    The claim of Specialized Loan Servicing, LLC, ("SLS"), to the extent allowed as a secured claim under § 506 of the Code.

Class 1G.    The claim of Heritage Point, HOA, ("Heritage Point"), to the extent allowed as a secured claim under § 506 of the Code.

</div>

2.02   Class 2.    All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)).

2.03   Class 3.    All unsecured claims allowed under § 502 of the Code.  (There are no claims in this class)

2.04   Class 4.    The interests of the individual Debtor in property of the estate

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01   Unclassified Claims.  Under section § 1123(a)(1), administrative expense claims, "gap" period claims in an involuntary case allowed under § 502(f) of the Code, and priority tax claims are not in classes.

3.02   Administrative Expense Claims.  Each holder of an administrative expense claim allowed under § 503 of Code , and a "gap" claim in an involuntary case allowed under § 502(f) of the Code, will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03   Priority Tax Claims.  Each holder of a priority tax claim will be paid in full no later than 60 months from the petition date.

3.04   United States Trustee Fees.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01   Claims and interests shall be treated as follows under this Plan:

1.     *Priority Tax Claims*

B24A (Official Form 25A) (12/08) - Cont.                                    3

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| NONE. | $0.00 | N/A | N/A |

2.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1A | *Secured claim of:* Nationstar Mortgage, dba Mr. Cooper, ("Nationstar")<br><br>Collateral description =<br><br>House and lot located at 6913 Glendower Road in Raleigh, NC<br><br>Deed of Trust filed on 9/2/2004 in Book 11002, Page 1659, Wake County Registry.<br><br>Allowed Secured Amount = $180,000.00 | No | Impaired | Monthly Pmt = $966.28<br><br>Pmts Begin 5/1/2020<br><br>Pmts End 4/1/2050<br><br>Interest rate % = 5.0%<br><br>Treatment of Lien<br><br>Nationstar shall retain a lien in the amount of $180,000.00 until said amount, with interest is paid in full as proposed hereunder. |

B24A (Official Form 25A) (12/08) - Cont.                                                    4

| | | | | |
|---|---|---|---|---|
| | Priority of lien = 1st priority lien<br><br>Principal owed = $299,758.36<br><br>Pre-pet. arrearage = $unk.<br><br>Total claim = $299,758.36 | | | Upon Confirmation of this Plan, the Debtor's obligation for payment of the lien claim held by Nationstar shall be deemed current and all arrearages cured.<br><br>Unless specifically modified in the Debtor's Plan, all terms and conditions contained in the promissory note and other contractual documents between the parties shall remain in full force and effect.<br><br>The monthly payment amount includes principal and interest payment in the amount of $966.28. Taxes and insurance payments shall be not escrowed as part of this Plan.<br><br>All amounts owed in excess of the Allowed Secured Amount shall be bifurcated and shall not be paid as the Debtor has no liability for the Principal owed and Mr. Burns has previously discharged all liability for the Principal owed. |
| 1B | *Secured claim of:* Nationstar Mortgage, dba Mr. Cooper, ("Nationstar")<br><br>Collateral description = | No | Impaired | The Debtor will surrender the collateral securing this claim to Nationstar in full satisfaction of its claims. |

B24A (Official Form 25A) (12/08) - Cont.                                    5

|  |  |  |  |  |
|---|---|---|---|---|
|  | House and lot located at 310/312 West Park Street in Cary, NC<br><br>Deed of Trust filed on 9/2/2004 in Book 11002, Page 1625, Wake County Registry.<br><br>Allowed Secured Amount = $150,000.00<br><br>Priority of lien = 1st priority lien<br><br>Principal owed = $181,596.76<br><br>Pre-pet. arrearage = $unk.<br><br>Total claim = $181,596.76 |  |  |  |
| 1C | *Secured claim of:* NewRez, LLC, dba Shellpoint Mortgage Servicing, ("NewRez")<br><br>Collateral description =<br><br>House and lot located at 839 Barringer Drive in Raleigh, NC<br><br>Deed of Trust filed on 7/9/2004 in Book 10915, Page 1465, Wake County Registry.<br><br>Allowed Secured Amount = $160,000.00<br><br>Priority of lien = 1st priority lien | No | Impaired | Monthly Pmt = $858.91<br><br>Pmts Begin 5/1/2020<br><br>Pmts End 4/1/2050<br><br>Interest rate % = 5.0%<br><br>Treatment of Lien<br><br>NewRez shall retain a lien in the amount of $160,000.00 until said amount, with interest is paid in full as proposed hereunder.<br><br>Upon Confirmation of this Plan, the Debtor's obligation for payment |

B24A (Official Form 25A) (12/08) - Cont.                                                        6

| | | | | |
|---|---|---|---|---|
| | Principal owed = $190,571.13<br><br>Pre-pet. arrearage = $unk.<br><br>Total claim = $190,571.13 | | | of the lien claim held by NewRez shall be deemed current and all arrearages cured.<br><br>Unless specifically modified in the Debtor's Plan, all terms and conditions contained in the promissory note and other contractual documents between the parties shall remain in full force and effect.<br><br>The monthly payment amount includes principal and interest payment in the amount of $858.91. Taxes and insurance payments shall be not escrowed as part of this Plan.<br><br>All amounts owed in excess of the Allowed Secured Amount shall be bifurcated and shall not be paid as the Debtor has no liability for the Principal owed and Mr. Burns has previously discharged all liability for the Principal owed. |
| 1D | *Secured claim of:* Select Portfolio Servicing, Inc., ("SPS")<br><br>Collateral description = <br><br>House and lot located at 1129 Karial Court in Zebulon, NC | No | Impaired | Monthly Pmt = $322.09<br><br>Pmts Begin 5/1/2020<br><br>Pmts End 4/1/2050 |

| | | | | |
|---|---|---|---|---|
| | Deed of Trust filed on 9/19/2006 in Book 12172, Page 1507, Wake County Registry.<br><br>Allowed Secured Amount = $60,000.00<br><br>Priority of lien = 1st priority lien<br><br>Principal owed = $86,064.40<br><br>Pre-pet. arrearage = $unk.<br><br>Total claim = $86,064.40 | | | Interest rate % = 5.0%<br><br>Treatment of Lien<br><br>SPS shall retain a lien in the amount of $160,000.00 until said amount, with interest is paid in full as proposed hereunder.<br><br>Upon Confirmation of this Plan, the Debtor's obligation for payment of the lien claim held by SPS shall be deemed current and all arrearages cured.<br><br>Unless specifically modified in the Debtor's Plan, all terms and conditions contained in the promissory note and other contractual documents between the parties shall remain in full force and effect.<br><br>The monthly payment amount includes principal and interest payment in the amount of $322.09. Taxes and insurance payments shall be not escrowed as part of this Plan.<br><br>All amounts owed in excess of the Allowed Secured Amount shall be bifurcated and shall not be paid as the Debtor has no liability for the Principal owed |

B24A (Official Form 25A) (12/08) - Cont.                                            8

|  |  |  |  | and Mr. Burns has previously discharged all liability for the Principal owed. |
|---|---|---|---|---|
| 1E | *Secured claim of:* Specialized Loan Servicing, LLC, ("SLS")<br><br>Collateral description =<br><br>House and lot located at 1129 Karial Court in Zebulon, NC<br><br>Deed of Trust filed on 9/19/2006 in Book 12172, Page 1527, Wake County Registry.<br><br>Allowed Secured Amount = $0.00<br><br>Priority of lien = 2nd priority lien<br><br>Principal owed = $19,618.22<br><br>Pre-pet. arrearage = $unk.<br><br>Total claim = $19,618.22 | No | Impaired | The lien of SLS shall be avoided in its entirety as there is no equity in the property securing its lien.<br><br>All amounts owed to SLS shall be bifurcated and shall not be paid as the Debtor has no liability for the Principal owed and Mr. Burns has previously discharged all liability for the Principal owed.<br><br>The Wake County Register of Deeds shall cause the Deed of Trust filed in Book 12172, Page 1527, Wake County Registry to be marked "satisfied" or "canceled" within 30 days of the Effective Date of the Plan and SLS shall assist the Clerk and Debtor in any way reasonably necessary to cause the Deed of Trust to be marked as "satisfied" or "canceled". |
| 1F | *Secured claim of:* Specialized Loan Servicing, LLC, ("SLS")<br><br>Collateral description =<br><br>House and lot located at | No | Impaired | Monthly Pmt = $858.91<br><br>Pmts Begin 5/1/2020<br><br>Pmts End 4/1/2050 |

| | | | | |
|---|---|---|---|---|
| | 829 Barringer Drive in Raleigh, NC<br><br>Deed of Trust filed on 11/9/2005 in Book 11670, Page 1943, Wake County Registry.<br><br>Allowed Secured Amount = $160,000.00<br><br>Priority of lien = 1st priority lien<br><br>Principal owed = $182,133.99<br><br>Pre-pet. arrearage = $unk.<br><br>Total claim = $182,133.99 | | | Interest rate % = 5.0%<br><br>Treatment of Lien<br><br>SLS shall retain a lien in the amount of $160,000.00 until said amount, with interest is paid in full as proposed hereunder.<br><br>Upon Confirmation of this Plan, the Debtor's obligation for payment of the lien claim held by SLS shall be deemed current and all arrearages cured.<br><br>Unless specifically modified in the Debtor's Plan, all terms and conditions contained in the promissory note and other contractual documents between the parties shall remain in full force and effect.<br><br>The monthly payment amount includes principal and interest payment in the amount of $858.91. Taxes and insurance payments shall be not escrowed as part of this Plan.<br><br>All amounts owed in excess of the Allowed Secured Amount shall be bifurcated and shall not be paid as the Debtor has no liability for the Principal owed |

B24A (Official Form 25A) (12/08) - Cont.                                    10

| | | | | |
|---|---|---|---|---|
| | | | | and Mr. Burns has previously discharged all liability for the Principal owed. |
| 1G | *Secured claim of:* Heritage Point HOA, ("Heritage Point") Collateral description = All real property owned by the Debtor. Judgment lien filed on 4/9/2015 in file number 14 CVD 16826, Wake County. Allowed Secured Amount = $0.00 Priority of lien = 2nd priority lien Principal owed = $10,715.67 Pre-pet. arrearage = $unk. Total claim = $10,715.67 | No | Impaired | The lien of Heritage Point shall be avoided in its entirety as there is no equity in any property owned by the Debtor securing its lien. All amounts owed to Heritage Point shall be bifurcated and shall not be paid as the Debtor has no liability for the Principal owed. The Wake County Clerk of Court shall cause the Judgment filed in case number 14 CVD 16826 to be marked "satisfied" or "canceled" within 30 days of the Effective Date of the Plan and Heritage Point shall assist the Clerk and Debtor in any way reasonably necessary to cause the Judgment to be marked as "satisfied" or "canceled". |

3.      *Classes of Unsecured Claims*

        Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 2 | None | | |

4.    *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plans proposed treatment of Classes 3A through 3B, which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 3 | General Unsecured Class | Not Impaired | There are no unsecured creditors. |

5.    The interests of the individual Debtor in property of the estate.

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.  In a partnership, equity interest holders include both general and limited partners.  In a limited liability company ("LLC"), the equity interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 4 | Shareholder's interest in property of the Estate | Impaired | Title to and ownership of all property of the estate will vest in the Debtor upon Confirmation of the Plan, subject to all valid liens of Secured Creditors under the Confirmed Plan. Liens of bifurcated Claims will be valid |

| | | | only to the extent of the Allowed Secured Amount of the Claim |
|---|---|---|---|

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order].

5.03    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor assumes the following executory contracts and/or unexpired leases effective upon the effective date of this Plan as provided in Article VII:

All leases listed on its latest amended Schedule G.

(b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the effective date of this Plan.  A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than May 1, 2021.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

Payments and distributions under the Plan will be funded by the following:

The Debtor expects to receive gross monthly rental income in the amount of $4,950.00 from the full rentals of the various properties owned by the Debtor.

The Debtor's specific income and non-mortgage expenses for each rented property is as

B24A (Official Form 25A) (12/08) - Cont.                                                                13

follows:

| Property Address: | Monthly Rent: | Monthly Taxes: | Monthly Insurance: | Maintenance: | Net Rent: |
|---|---|---|---|---|---|
| 6319 Glendower | $2,000.00 | $237.13 | $87.83 | $80.00 | $1,595.04 |
| 310/312 W. Park | $0.00 (Surrender) | | | | $0.00 |
| 839 Barringer | $1,500.00 | $186.57 | $56.42 | $80.00 | $1,177.01 |
| 1129 Karial Court | $0.00 | $75.60 | $50.67 | $80.00 | -$206.27 |
| 829 Barringer | $1,450.00 | $165.55 | $59.25 | $80.00 | $1,145.20 |
| TOTAL: | $4,950.00 | $664.85 | $254.17 | $320.00 | $3,710.98 |

From the gross rental proceeds, the Debtor proposes to make the following monthly payment to lien holders, with each payment including only principal and interest:

| Property Address: | Net Monthly Rent: | Proposed Payment: | Net after Plan payments: |
|---|---|---|---|
| 6319 Glendower | $1,595.04 | $966.28 | $628.76 |
| 310/312 W. Park | $0.00 | $0.00 (surrender) | $0.00 |
| 839 Barringer | $1,177.01 | $858.91 | $318.10 |
| 1129 Karial Court | -$206.27 | $322.09 | -$528.36 |
| 829 Barringer | $1,145.20 | $858.91 | $286.29 |
| TOTAL: | $3,710.98 | $3,006.19 | **$704.79** |

TOTAL SECURED PLAN PAYMENTS::                                    $3,006.19

Net average income remaining after all expenses and monthly plan payments are made:                                              **$704.79**

## ARTICLE VIII
## GENERAL PROVISIONS

8.01   Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: None.

8.02   Effective Date of Plan.  The effective date of this Plan is the eleventh business day following the date of the entry of the order of confirmation.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03   Severability.  If any provision in this Plan is determined to be unenforceable, the

determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    Binding Effect.  The rights and obligations of any entity named or referred to in the Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Code or Federal Rules of Bankruptcy Procedure), the laws of the State of North Carolina shall govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07    Corporate Governance.  Not applicable.


## ARTICLE IX
## DISCHARGE

9.01    Discharge.  Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments to Class 3 General Unsecured Creditors under the Plan, or as otherwise provided in § 1141(d)(5) of the Code.  **The Debtor is not entitled to a Discharge in this case, and does not seek a Discharge in this case.** Debtor will not be discharged from any debt excepted from discharge § 523 of the Code, except as provided in Rule 4007(C) of the Federal Rules of Bankruptcy Procedure.


## ARTICLE X
## OTHER PROVISIONS

NONE.

S/James Jerald Burns
James Jerald Burns, President

S/ Danny Bradford
Danny Bradford, Attorney for Debtor

**B25B (Official Form 25B) (12/08) - Cont.**                                                                  24

**Exhibit B** - Identity and Value of Material Assets of Debtor

All of the material assets of the Debtor are listed on Schedules A and B attached hereto.  The values of each assets correspond thereto.

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor name | **Burns Asset Management, Inc.** |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NORTH CAROLINA |
| Case number (if known) | **20-03888-5** |

☐ Check if this is an amended filing

## Official Form 206A/B
# Schedule A/B: Assets - Real and Personal Property
**12/15**

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | | Current value of debtor's interest |
|---|---|---|---|---|
| 3. | **Checking, savings, money market, or financial brokerage accounts** *(Identify all)* | | | |
| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
| 3.1. | **Wells Fargo Bank.** | **Checking.** | **4594** | **$4.47** |

| 4. | **Other cash equivalents** *(Identify all)* | |
|---|---|---|
| 5. | **Total of Part 1.** | **$4.47** |
| | Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80. | |

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

■ No. Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

**10. Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.
■ Yes Fill in the information below.

| 11. | **Accounts receivable** | | | | |
|---|---|---|---|---|---|
| | 11a. 90 days old or less: | **1,500.00** | - | **0.00** | = .... **$1,500.00** |
| | | face amount | | doubtful or uncollectible accounts | |

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

| Debtor | **Burns Asset Management, Inc.** | Case number *(If known)* **20-03888-5** |
|---|---|---|
| | Name | |

| 12. | Total of Part 3.<br>Current value on lines 11a + 11b = line 12. Copy the total to line 82. | | $1,500.00 |
|---|---|---|---|

**Part 4:   Investments**

**13. Does the debtor own any investments?**

■ No.  Go to Part 5.
☐ Yes Fill in the information below.

**Part 5:   Inventory, excluding agriculture assets**

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No.  Go to Part 6.
☐ Yes Fill in the information below.

**Part 6:   Farming and fishing-related assets (other than titled motor vehicles and land)**

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.
☐ Yes Fill in the information below.

**Part 7:   Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No.  Go to Part 8.
☐ Yes Fill in the information below.

**Part 8:   Machinery, equipment, and vehicles**

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No.  Go to Part 9.
☐ Yes Fill in the information below.

**Part 9:   Real property**

**54. Does the debtor own or lease any real property?**

☐ No.  Go to Part 10.
■ Yes Fill in the information below.

55.   **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1. **6913 Glendower Road<br>Raleigh, NC  27613** | Fee simple | $0.00 | | $180,000.00 |

| Official Form 206A/B | Schedule A/B Assets - Real and Personal Property | page 2 |
|---|---|---|

Debtor    **Burns Asset Management, Inc.**                                    Case number *(If known)*  **20-03888-5**
_____Name_____

| | | | | |
|---|---|---|---|---|
| 55.2. | **1129 Karial Court**<br>**Zebulon, NC  27597** | Fee simple | $0.00 | $60,000.00 |
| 55.3. | **310/312 West Park**<br>**Street**<br>**Cary, NC  27511** | Fee simple | $0.00 | $150,000.00 |
| 55.4. | **829 Barringer Drive**<br>**Raleigh, NC  27606** | Fee simple | $0.00 | $160,000.00 |
| 55.5. | **839 Barringer Drive**<br>**Raleigh, NC  27606** | Fee simple | $0.00 | $160,000.00 |

56.    **Total of Part 9.**                                                                                          | $710,000.00 |

     Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.
     Copy the total to line 88.

57.    **Is a depreciation schedule available for any of the property listed in Part 9?**
     ■ No
     ☐ Yes

58.    **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
     ■ No
     ☐ Yes

**Part 10:**    **Intangibles and intellectual property**

**59. Does the debtor have any interests in intangibles or intellectual property?**

     ■ No.  Go to Part 11.
     ☐ Yes Fill in the information below.

**Part 11:**    **All other assets**

**70. Does the debtor own any other assets that have not yet been reported on this form?**
     Include all interests in executory contracts and unexpired leases not previously reported on this form.

     ■ No.  Go to Part 12.
     ☐ Yes Fill in the information below.

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Debtor | **Burns Asset Management, Inc.** | Case number *(If known)* **20-03888-5** |
|---|---|---|
| | Name | |

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** Copy line 5, Part 1 | $4.47 | |
| 81. **Deposits and prepayments.** Copy line 9, Part 2. | $0.00 | |
| 82. **Accounts receivable.** Copy line 12, Part 3. | $1,500.00 | |
| 83. **Investments.** Copy line 17, Part 4. | $0.00 | |
| 84. **Inventory.** Copy line 23, Part 5. | $0.00 | |
| 85. **Farming and fishing-related assets.** Copy line 33, Part 6. | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** Copy line 43, Part 7. | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** Copy line 51, Part 8. | $0.00 | |
| 88. **Real property.** Copy line 56, Part 9...............................................................> | | $710,000.00 |
| 89. **Intangibles and intellectual property.** Copy line 66, Part 10. | $0.00 | |
| 90. **All other assets.** Copy line 78, Part 11. | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $1,504.47 + 91b. | $710,000.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $711,504.47 |

**B25B (Official Form 25B) (12/08) - Cont.** 25

**Exhibit C** - Prepetition Financial Statements

None.

**B25B (Official Form 25B) (12/08) - Cont.**                                      26

**Exhibit D -** Most recently Filed Postpetition Operating Report

None.

**B25B (Official Form 25B) (12/08) - Cont.** 27

## Exhibit E - Liquidation Analysis

### *Plan Proponent's Estimated Liquidation Value of Assets*

**Assets**

| | | |
|---|---|---|
| a. | Cash on hand | $2,279.47 |
| b. | Accounts receivable | $4,425.00 |
| c. | Inventory | $0.00 |
| d. | Household goods | $0.00 |
| e. | ATV | $0.00 |
| f. | Automobiles | $0.00 |
| g. | Building & land | $560,000.00 |
| h. | Customer list | $0.00 |
| i. | Investment property (such as stocks, bonds or other financial assets) | $0.00 |
| j. | Lawsuits or other claims against third parties | $0.00 |
| k. | Other intangibles (such as avoiding powers actions) | $0.00 |

|  |  |
|---|---|
| ***Total Assets at Liquidation Value*** | ***$766,704.47*** |

**Less:**
Secured creditors' recoveries                                    $560,000.00
**Less:**
Chapter 7 trustee fees and expenses                          $0.00
**Less:**
Chapter 11 administrative expenses                          $10,000.00
**Less:**
Priority claims, excluding administrative expense claims     $0.00
**Less:**
Debtor's claimed exemptions                                   $0.00

(1) Balance for unsecured claims                             $0.00

(2) Total dollar amount of unsecured claims               $0.00

***Percentage of Claims Which Unsecured Creditors Would Receive or Retain in a Chapter 7 Liquidation:***          0%

***Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:***          0%

Exhibit F - Cash on hand on the effective date of the Plan

**Cash on hand on effective date of the Plan:**                        **$14,118.05**

*Less -*

| | |
|---|---|
| Amount of administrative expenses payable on effective of the Plan | -$10,000.00 |
| Amount of statutory costs and charges | -$0.00 |
| Amount of cure payments for executory contracts | -$0.00 |
| Other Plan Payments due on effective date of the Plan | -$0.00 est. |
| Balance after paying these amounts................ | $4,118.05 est. |

The sources of the cash Debtors will have on hand by the effective date of the Plan are estimated as follows:

| | |
|---|---|
| $2,279.47 est. | Cash in Debtors' bank account now |
| +1,838.58 est. | Additional cash Debtors will accumulate from net earnings between now and effective date of the Plan from his salary and from Rental Income. |
| + $0.00 | Borrowing |
| + $10,000.00 | Capital Contributions |
| + $0.00 | Other |
| **$14,118.05** | **Total** |

B25B (Official Form 25B) (12/08) - Cont.                                                                29

**Exhibit G** - Projections of Cash Flow and Earnings for Post-Confirmation Period

Payments and distributions under the Plan will be funded by the following:

The Debtor expects to receive gross monthly rental income in the amount of $4,950.00 from the full rentals of the various properties owned by the Debtor.

The Debtor's specific income and non-mortgage expenses for each rented property is as follows:

| Property Address: | Monthly Rent: | Monthly Taxes: | Monthly Insurance: | Maintenance: | Net Rent: |
|---|---|---|---|---|---|
| 6319 Glendower | $2,000.00 | $237.13 | $87.83 | $80.00 | $1,595.04 |
| 310/312 W. Park | $0.00 (Surrender) | | | | $0.00 |
| 839 Barringer | $1,500.00 | $186.57 | $56.42 | $80.00 | $1,177.01 |
| 1129 Karial Court | $0.00 | $75.60 | $50.67 | $80.00 | -$206.27 |
| 829 Barringer | $1,450.00 | $165.55 | $59.25 | $80.00 | $1,145.20 |
| TOTAL: | $4,950.00 | $664.85 | $254.17 | $320.00 | $3,710.98 |

From the gross rental proceeds, the Debtor proposes to make the following monthly payment to lien holders, with each payment including only principal and interest:

| Property Address: | Net Monthly Rent: | Proposed Payment: | Net after Plan payments: |
|---|---|---|---|
| 6319 Glendower | $1,595.04 | $966.28 | $628.76 |
| 310/312 W. Park | $0.00 | $0.00 (surrender) | $0.00 |
| 839 Barringer | $1,177.01 | $858.91 | $318.10 |
| 1129 Karial Court | -$206.27 | $322.09 | -$528.36 |
| 829 Barringer | $1,145.20 | $858.91 | $286.29 |
| TOTAL: | $3,710.98 | $3,006.19 | **$704.79** |

TOTAL SECURED PLAN PAYMENTS::                          $3,006.19

Net average income remaining after all expenses and monthly plan payments are made:                                          **$704.79**